# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLPH ELLIS, | Case No.  1:21-cv-1539-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| K. SANTORO, et al., | (ECF No. 27) |
| Defendants. | |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Rudolph Ellis ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend.  Plaintiff's second amended complaint is currently before the Court for screening.  (ECF No. 27.)

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

1

true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed in High Desert State Prison in Susanville, California. Plaintiff alleges the events in the second amended complaint occurred while he was housed at North Kern State Prison. Plaintiff names the following as defendants: (1) K. Santoro, Warden, (2) LVN T. Garcia, (3) B. Gutierrez, correctional officer (4) A. Urquieto, correctional officer, (5) J. Rivera, correctional officer, (6) Lt. A. Flores, (7) L. Garnica, correctional officer, (8) L. Jamenez,[1] correctional officer, (9) A. Perez, correctional officer, (10) J. Ochoa, sergeant, (11) E. Raymer, supervising nurse, (12) A. Contreros-Oriega, grievance coordinator, (13) A. Lopez, correctional officer, (14) I. Meza, RN, (15) J. Jaime, Sergeant, (16) Ginder, Correctional lieutenant, at High Desert State Prison, (17) E. Meraz, sergeant, High Desert State Prison, and (18) C. McPherson, Health Care Grievance Office representative, at Valley State Prison.

In claim 1, Plaintiff alleges as follows. While housed at KVSP, A facility, two correctional officers arrived at plaintiff's cell and announced that Plaintiff and his cellmate needed to step out and conduct a search of their cell. The cell door was suddenly opened by the control booth officer, A. Perez. At that time, Defendant B. Gutierrez and Defendant Urquieta instructed Plaintiff and inmate Kelly to step out of this cell and face the wall. At that point, Plaintiff ran.

---

[1] Plaintiff spells this defendant's name as both "Jamenez" and "Jimenez." For purposes of this screening, the Court adopts "Jimenez" as the defendant's name. Plaintiff is cautioned that misspelling of defendant's name may result in an inability to serve this defendant.

To stop Plaintiff from running, Defendant B. Gutierrez tried to trip Plaintiff by kicking his leg. Plaintiff continued to run. As he was making his way down B section stairs, Plaintiff saw Defendant B. Gutierrez running down C section stairs and heading in Plaintiff's direction.  B. Guiterrez fell, and A. Urquieta who was monitoring inmate Kelly, abandoned Kelly and joined in the pursuit of Plaintiff.  Plaintiff ran to cell 127 which housed Johnson and slid contraband consisting of a cell phone underneath his door. At that point, Plaintiff gave himself up by laying on the floor in a prone position in front of cell 127. As this was happening, defendant A. Perez opened inmate Johnson's cell.

Defendant B. Gutierrez came from behind and stood in front of Inmate Johnson's door and commanded Johnson and his cellmate to stand at the back of the cell with their hands in the air. B. Gutierrez looked at Plaintiff while Plaintiff was laying on the prone position and said."**** **** you wanna **** run from me and my partner." At that point, Plaintiff felt a burst of OC pepper spray blast him in the eyes and facial area. Plaintiff turned his head to avoid the assault that defendant B. Gutierrez had inflicted on him.  Plaintiff was sprayed by Defendant A. Urquieta, who said that Plaintiff was going to think twice about running from him and his partner.

Then first responders ran into the building and approached the area.  Plaintiff saw Defendant J. Rivera shake his OC pepper spray and join in this assault by spraying Plaintiff all over his body.  After J. Rivera finished pepper spraying Plaintiff, Rivera and J. Jimenez then handcuffed Plaintiff, grabbed him by the arm and yanked him to his feet and escorted him out of the building.

Plaintiff was escorted by Defendants J. Rivera and John Doe to the contamination showers. Defendant J. Ochoa, B. Gutierrez, and A. Urquieta followed.  Plaintiff and the five named Defendants arrived at the decontamination area, Defendants A. Flores and L. Garnica were standing in the entranceway and led the way to the showerhead.  Defendant John Doe turned on the decontamination water.  Plaintiff assumed he was going to be allowed to rinse off the pepper spray.  Plaintiff had repeatedly told the escorting officers that Plaintiff could not breath due to the pepper spray.

As Plaintiff was awaiting instructions to step in the shower, Defendant J. Rivera, without

3

warning, slammed Plaintiff's head into the wall. The force was so powerful that Plaintiff became dazed. Plaintiff felt numerous individuals began to punch him in the back of the head. Plaintiff's body gave out and he dropped to his knees. At that point, Plaintiff observed defendants B. Gutierrez and J. Jimenez close in and begin to punch Plaintiff on the side of the head and temple. The Plaintiff fell, prison guards boots crashing into his back, which forced him to fall on his stomach. Defendants John Doe, A. Urquieta, L. Garnica, J. Ochoa, and A. Flores began kicking and stomping on his ribs and head.  Defendant J. Rivera bent down and took hold of Plaintiff's head and smashed it into the ground several times. Plaintiff never lost consciousness, however. After Defendant J. Rivera was done slamming Plaintiff's head into the ground, he and John Doe grabbed Plaintiff by his arm and yanked him to his feet. Plaintiff was in handcuffs the entire time. He pleaded to Defendants to stop hitting him and to let him decontaminate. Defendant John Doe turned on the water. But when Plaintiff moved towards the water, Defendant J. Rivera slammed Plaintiff's head into the water fountain. Defendants B. Gutierrez, A. Urquieta, L. Garnica, A. Florez, J. Ochoa, and John Doe laughed.  Plaintiff was escorted by Defendant J. Rivera to the gym and placed inside holding cage #3. And his handcuffs were removed from Plaintiff's wrists.

Defendant LVN Garcia came and inquired about Plaintiff's mental health. Plaintiff said his mental health was fine, but the guards just "beat him." Plaintiff told LVN Garcia that Plaintiff had pain all over his body and was having trouble breathing due to being pepper sprayed and not being allowed to decontaminate.

Defendants A. Flores, J, Rivera, and L. Garnica were present when Plaintiff reported his medical injuries to defendant T. Garcia. Defendant A. Flores told T. Garcia to disregard what Plaintiff just said and to write in her report that Plaintiff said, "No comment and no injuries." Defendant T. Garcia began to walk away and Plaintiff yelled he needed attention, but she kept walking. Defendant A. Flores and J. Rivera walked away laughing. The only remaining defendant in the gym where Plaintiff was, was Defendant L. Garnica. Plaintiff continually called out to him and said that Plaintiff's ribs and heads were hurting, that he needed medical attention, but Defendant ignored Plaintiff's cries.

Plaintiff called to Defendant A. Lopez stating Plaintiff needed to be decontaminated, he

needed medical attention, and he needed to relieve himself. Defendant A. Lopez made eye contact with Plaintiff but ignored Plaintiff. Plaintiff could not hold his bodily fluids and urinated and defecated in the cage. Plaintiff used his T shirt to clean himself.

Defendant A. Flores came forty-five minutes later and took Plaintiff to the area used by inmates as urinals and toilets. Flores asked Plaintiff if he had been searched and since Plaintiff said no, Flores grabbed Plaintiff by the wrist as if he was going to uncuff Plaintiff to use the toilets. However, Defendant said for Plaintiff to spread his legs and Plaintiff complied but instructed him to further spread legs. Defendant A. Flores kicked Plaintiff from behind in the scrotum. Plaintiff fell to his knees and yelled loudly from the pain and suffering from being kicked. Defendant A. Lopez was standing nearby and neglected to intervene. A. Flores told Plaintiff to shut up and lifted Plaintiff by the arms to his feet. Plaintiff was escorted back to the same unsanitary holding cage he had been made to urinate and defecate inside.

Defendant A. Lopez ignored Plaintiff's cries that he needed medical attention due to the pain from being beaten and kicked.

Plaintiff was sent to Administrative Segregation and was denied a shower or to be seen by a nurse. Due to the lingering effects of the pepper spray and soreness from the internal injuries Plaintiff suffered and he could not sleep and stayed awake the entire night. The next day, a psych tech nurse stopped by Plaintiff's cell to give him a CDC7362 medical slip. Plaintiff attaches the slip as Exhibit A,

On 3/3/21, Plaintiff was taken to the Ad Seg medical unit, which documented his injuries on Exhibit B. Plaintiff was ultimately transferred to an outside medical facility. Plaintiff explained to the outside doctors that Plaintiff had been assaulted by several correctional officers. Plaintiff underwent an EKG, CAT SCAN, X-Rays and received morphine. The reports said Plaintiff had abrasions on multiple sites/discharge diagnosis of assault, blunt head trauma, concussion, back contusions, rib contusion and abrasions, citing Exhibit C.

Back in Ad Seg, Plaintiff was not allowed to shower because showers had been completed for the day. It was 2 days before Plaintiff was allowed to wash off the OC pepper spray causing pain on his skin.

5

Plaintiff submitted a 602 on 3/8/21, but the appeals coordinator responded that no grievance had been received from Plaintiff since November 13, 2020, citing Exhibit D.  Plaintiff resubmitted the 602 against all officers involved in the assault against Plaintiff and for failing to provide medical care, citing Exh. E.  He submitted a GA22 form to the appeals coordinator to ensure his appeal had been received and processed.

Plaintiff then discusses how his family became involved for his wellness.  His 602s were accepted and video was taken of his injuries, but this was 3 weeks after the incident.  Plaintiff's Health Care Grievance was investigated by Defendant  E. Raymer.  Plaintiff complains that Defendant E. Raymer, in his investigative report, covered up that Plaintiff had been assaulted and misreporting what Plaintiff had said (HCG#21000004), citing Exhibit G. Defendant McPherson, the Health Care Grievance Office Representative, intentionally tried to prohibit the processing of HCG#21000004.  Mcpherson's refused to process the grievance on the erroneous basis that it was a duplicate.  Plaintiff submitted more grievances attempting to clarify that prior grievances were not duplicative.  McPherson refused to properly process the grievance.[2]

Plaintiff alleges he was falsely accused by fabricated evidence.  On 3/16/21, Plaintiff was issued a Rules Violation Report that Plaintiff had committed a battery.  It alleged that Plaintiff pushed himself off the wall and stepped backward, faced officer B. Gutierrez and pushed her with both hand causing her to hit the back of her head and fall to one knee.  Defendants B. Gutierrez, A. Urquieta, J. Rivera, John Doe, L. Garnica, J. Ochoa and A. Flores fabricated he had injuries and had to use force on Plaintiff, citing Exhibit T.

Plaintiff was given an investigative employee who Plaintiff gave a list of interrogatories to ask the Defendants, citing Exhibit U.  Plaintiff, by now was housed in High Desert State Prison.  Defendant E. Meraz deemed all of the Plaintiff questions irrelevant, instead of sending the questions to North Kern Prison and letting officials there decide what was relevant.

Plaintiff was brought to hearing before Defendant Ginder.  Plaintiff told Ginder that

---

[2] Paragraphs 66-73, 79-80, describe various actions involving his grievances.  The Court conserves its resources and does not summarize these paragraphs.  As explained below, processing of grievances fails to state a cognizable claim under Section 1983.

Plaintiff's rights were violated because Plaintiff's questions were not presented to Defendants. Defendant Ginder was not sympathetic and found Plaintiff guilty.

Plaintiff later learned that Psyc. Tech. Kerchner admitted she accepted two grievances from Plaintiff which she put in the grievance box. Defendant Contreras-Omega is responsible for picking up the grievances from the box and were gotten rid of. The grievances were in the grievance box and he got rid of them.

Plaintiff believes there is a conspiracy. For instance, Defendant Captain J. Jaime got together with subordinate defendants to go over the initial narrative statements reported in the incident report. The Incident reports show that the staff narratives were reviewed by Defendant Ochoa. Plaintiff's positions is that these interviews were meetings that demonstrate they met to conspire against Plaintiff to cover up excessive use of force, failure to intervene, and deliberate indifference to medical need.

Plaintiff now suffers from post-traumatic stress disorder.

Defendant I. Meza conspired with Defendant B. Gutierrez to perpetuate that big lie that Guiterrez had been assaulted. Guieterrez filled out the 7219 herself to fill in her injuries.

Plaintiff alleges violation of the Eighth Amendment to the Constitution.

Plaintiff alleges that Defendant B. Gutierrez failed to intervene to stop the battery on Plaintiff and the use of OC pepper spray. She also kicked and punched Plaintiff.

Plaintiff alleges he was subjected to retaliatory confinement in Ad Seg on 3/2/21 under false pretenses designed to cover up the assault and battery inflicted on Plaintiff.

As remedies, Plaintiff seeks declaratory judgement and injunctive relief. Plaintiff also seeks compensatory and punitive damages.

**III.    Discussion**

**Exhibits**

While "much liberality is allowed in construing pro se complaints, a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Lam v. Cal. Dep't of Corr. & Rehab.,* No. 1:23-

CV-01167 BAM PC, 2023 WL 8701254, at *2 (E.D. Cal. Dec. 15, 2023), report and recommendation adopted, No. 1:23-CV-1167 JLT BAM PC, 2024 WL 201269 (E.D. Cal. Jan. 18, 2024) (quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017)). "The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim. In short, [Plaintiff] must state a claim, not merely attach exhibits." *Stewart v. Nevada*, No. 2:09-CV-01063-PMP-GWF, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011).

Plaintiff attaches over 150 pages of exhibits. Plaintiff has failed to provide any explanation as to the significance of these exhibits other than to wholesale incorporate the entirety of exhibits into his allegations.

**Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

As explained below, Plaintiff's complaint fails to state a claim. Plaintiff has failed to set forth sufficient facts to support a cognizable claim, except as noted below. Plaintiff's allegations are conclusory and merely lists a number of defendants without stating who did what to violate Plaintiff's rights.

**Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendant Warden, Lieutenant, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609

F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Here, Plaintiff has failed to establish that Defendant Warden, Defendant Lieutenant, or other supervisor, participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation.

**Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley,* 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement

refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. The incident of excessive force was at NKSP while Plaintiff's RVR proceedings were at High Desert State Prison. Plaintiff may not, in a single case, assert a claim related to excessive force against one set of defendants while simultaneously asserting a due process claim regarding unrelated disciplinary proceedings against a different set of defendants. Plaintiff may not bring unrelated claims against defendants at different institutions. Unrelated claims involving multiple defendants belong in different suits. Separate unrelated claims must be filed in separate lawsuits.

**Eighth Amendment**

Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.

*See Whitley*, 475 U.S. at 321–22.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Liberally construing the allegations in the complaint, Plaintiff states cognizable claim against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, A. Flores, B. Gutierrez, and J. Jimenez for the force used outside the shower, after Plaintiff was pepper sprayed.  Plaintiff states a claim against A. Flores for kicking Plaintiff in the scrotum.

Plaintiff fails to state a claim against any other defendant for being sprayed with OC pepper spray.  Plaintiff alleges he "ran in an attempt to dispose of contraband," continued running (during which an officer fell as he chased Plaintiff) and was sprayed after he halted.  Given his continued flight with contraband, the use of pepper spray is a reasonable legitimate penological purpose.

Plaintiff fails to state a claim for purported wrongful conduct once he arrived in AdSeg. Plaintiff fails to allege that any defendant was responsible for wrongful conduct.

<u>Medical Deliberate Indifference</u>

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a

11

prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Liberally construing the allegations, Plaintiff's complaint states a claim for medical deliberate indifference to medical care failure to decontaminate and assist Plaintiff after the alleged beating outside of the shower, against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, and A. Flores B. Gutierrez and J. Jimenez.

Plaintiff fails to state a cognizable claim against LVN Garcia. Plaintiff does not allege what injuries he had such that T. Garcia would know that Plaintiff was injured, and Plaintiff does not allege that T. Garica had authority to order Plaintiff decontaminated contrary to what officers said. Further, a difference of opinion is not a cognizable claim.

Plaintiff fails to state a claim against Defendants L. Garnica and A. Lopez when Plaintiff called out to Defendants Garnica and A. Lopez in the gym. There is no allegation that L. Garnica or A. Lopez heard Plaintiff's complaint inside the gym and knew that Plaintiff needed medical

care.

### Failure to Protect/Intervene

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d 1181; *Hearns*, 413 F.3d at 1040.

Plaintiff fails to state a cognizable failure to protect claim against any Defendant.  If a Defendant engages in force, they are not engaged in failure to protect.  In addition, Plaintiff fails to state a claim against Defendant T. Garcia.  The allegations do not demonstrate that she was present when the force was used and had the ability and authority to intervene in the force.

Plaintiff fails to state a claim against Defendant A. Lopez for failing to stop S. Flores from kicking Plaintiff in the scrotum.  Plaintiff alleges the kick was an instantaneous, single kick with no alleged facts that A. Lopez could have prevented the kick.

### Conditions of Confinement

Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (9th Cir. 1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each alone would not suffice, but only when they have a combined effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304–05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required

when prisoners are confined in small cells almost 24 hours per day), with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners had access to dayroom 18 hours per day)). Temporary unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995), abrogated on other grounds by *Sandin*, 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

Plaintiff fails to state a conditions of confinement claim. To the extent Plaintiff alleges he was placed in a cage for a short period of time without the use of a bathroom and was replaced back into the then unclean cell for a short period of time, Plaintiff has not alleged a sufficiently serious condition violative of the Eighth Amendment by these temporary conditions. *Anderson*, 45 F.3d at 1315 (no constitutional violation for placement in safety cages where the sanitary limitations imposed upon them were more than temporary and where inmate was in danger of self-harm).

**False Reports**

To the extent Plaintiff alleges that Defendants falsified chronos, disciplinary or medical reports against Plaintiff, he cannot state a claim.

The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).

**No Right to Appeals Process or to a Particular Investigation**

To extent Plaintiff is challenging how his grievances were handled, a prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert.

14

denied, 541 U.S. 1063 (2004); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Evans v. Cisneros*, No. 1:22-CV-01238 AWI BAM PC, 2023 WL 2696670, at *5 (E.D. Cal. Mar. 29, 2023) (no claim for failing to address appeals).

To the extent Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Ellis v. Cnty. of Kern*, No. 1:22-CV-00436 ADA BAM PC, 2023 WL 7005188, at *5 (E.D. Cal. Oct. 24, 2023), report and recommendation adopted, No. 1:22-CV-00436 NODJ BAM PC, 2023 WL 8934370 (E.D. Cal. Dec. 27, 2023) (stating no claim existed for Defendants failure to investigate Plaintiff's appeal regarding alleged excessive force and sexual assault).

**Housing in AdSeg**

Plaintiff is informed that any claim premised on the failure to house Plaintiff at a particular institution or in particular housing fails because Plaintiff is not entitled to be housed in any particular institution. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment); *accord King v. Lemos*, No. 1:20-CV-01837-NONE-BAM (PC), 2021 WL 2038187, at *6 (E.D. Cal. May

15

21, 2021). Therefore, any claim that Plaintiff was not housed or was housed at a certain security level correctional facility is not a cognizable claim.

In a conclusory fashion, Plaintiff alleges that being housed in AdSeg was retaliatory. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567– 68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff fails to state a cognizable claim. Plaintiff has failed to allege the facts for each of the elements of a claim for retaliation. Plaintiff's allegations are conclusory as to any protected conduct he engaged in and fails to allege he engaged in protected conduct. Plaintiff fails to allege that any conduct chilled Plaintiff's First Amendment rights or that it did not reasonably advance a legitimate correctional goal.  Indeed, Plaintiff alleges he was placed in AdSeg on 3/3/21, but did not file/submit a 602 grievance until after he had been placed in AdSeg.

**Due Process**

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or

16

correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 563-71. In addition "[s]ome evidence" must support the decision of the hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455–56 (emphasis added).

Plaintiff does not allege factual support that his RVR hearing failed to comply with the *Wolff* elements. Plaintiff complains that his interrogatories were not given to Defendants. However, denial of a specific piece of evidence does not necessarily violate due process. The second amended complaint does not allege facts indicating that Plaintiff was completely precluded from presenting evidence, nor does it assert facts explaining the relevance of the excluded evidence, any reasons the evidence was excluded, or how its exclusion prejudiced him. Moreover, this claim is improperly joined.

**Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). To have standing to bring this type of claim, Plaintiff must also allege he suffered an actual injury. *Vandelft v. Moses*, 31 F.3d 794, 798 (9th Cir. 1994). To establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not sufficient to state a cognizable claim. *Woodrum v. Woodward Cty.,* 866 F.2d 1121, 1126 (9th Cir. 1989).

Plaintiff makes general, omnibus allegations that the Defendants engaged in some conspiracy. Plaintiff alleges Defendant Captain J. Jaime got together with subordinate defendants

17

to go over the initial narrative statements reported in the incident report. The Incident reports show that the staff narratives were reviewed by Defendant Ochoa. Plaintiff's position is that these interviews were meetings that demonstrate they met to conspire against Plaintiff to cover up excessive use of force, failure to intervene, and deliberate indifference to medical need.

But false reports and meetings are not constitutional violations and therefore do not support a Section 1983 claim. Accordingly, Plaintiff fails to state a claim for conspiracy to violate constitutional rights.

### Injunctive Relief

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

### Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a

verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

**Doe Defendant**

Plaintiff has named one defendant as a John Doe.  As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

## IV.      Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's second amended complaint states cognizable claims for Eighth Amendment violations as follows: (1) for excessive force against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, A. Flores, B. Gutierrez, and J. Jimenez for the force used outside the shower, after Plaintiff was pepper sprayed, (2) for excessive force against A. Flores for kicking Plaintiff in the scrotum, (3) for medical deliberate indifference to medical care for failure to decontaminate and assist Plaintiff after the alleged beating outside of the shower, against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, A. Flores, B. Gutierrez, and J. Jimenez.  However, Plaintiff's second amended complaint fails to state any other cognizable claims for relief against any other defendants.

Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in the second amended complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's second amended complaint, filed January 20, 2026, (ECF No. 27) for Eighth Amendment violations as follows: (1) for excessive force against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, A. Flores, B. Gutierrez, and J. Jimenez for the force used outside the shower, after Plaintiff was pepper sprayed, (2) for

excessive force against A. Flores for kicking Plaintiff in the scrotum, (3) for medical deliberate indifference to medical care for failure to decontaminate and assist Plaintiff after the alleged the beating outside of the shower, against J. Rivera, John Doe, A. Urquieta, L. Garnica, J. Ochoa, and A. Flores, B. Gutierrez and J. Jimenez; and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 27, 2026**__            ___/s/ *Barbara A. McAuliffe*___

                                          UNITED STATES MAGISTRATE JUDGE